UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN OSCAR DOMINGUEZ,<br>Petitioner,<br>v.<br>WARDEN OF THE CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, *et al.*,<br>Respondents. | Case No. 1:26-cv-04898 (EJD)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

Petitioner Juan Oscar Dominguez is detained at the California City Immigration Processing Center pending his deportation from the United States pursuant to a final order of removal. He seeks a writ of habeas corpus under 28 U.S.C. § 2241 directing his immediate release from immigration custody. *See* Dkt. No. 1 at 19. He argues that his detention pending removal has become unconstitutionally prolonged, and that his re-detention by Respondent after a period of release violates his due process rights. *Id*. at 13, 16–18. Respondents oppose relief, contending that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A) given his prior criminal history. *See* Dkt. No. 10 at 2.

The court concludes that, on the record presented here, Petitioner's detention has become impermissibly prolonged, and he is entitled to relief on ground one of the Petition. Because this entitles him to complete relief—i.e., release from detention—the Court declines to consider the remaining claims in the petition.

## I. BACKGROUND

Based on the parties' submissions, the Court finds the following facts. Petitioner entered the United States on or about April 26, 1988. *Id*. at 9. Throughout the eighties and nineties, he was



United States District Court
Eastern District of California

convicted of several drug-related offenses, and was ultimately ordered removed to Cuba by an Immigration Judge on July 12, 2000. *Id.*; Dkt. No. 1 at 2. No appeal of that order was ever filed, and it became administratively final many decades ago. Following the removal order, it appears that the Department of Homeland Security ("DHS") detained Petitioner, though the length of this detention is unclear on the current record. Dkt. No. 1 at 3 (explaining that Petitioner was detained until 2006). He was released on an order of supervision ("OSUP") sometime in 2006. *Id.*; Dkt. No. 10 at 11 (explaining that Petitioner's OSUP was revoked on the date of his most recent arrest).

Petitioner was convicted of several additional crimes following his release from DHS custody. He was convicted of domestic battery in 2008 and drug trafficking in 2016. Dkt. No. 10 at 29–34. DHS was informed of Petitioner's 2016 drug-trafficking conviction, and that he was set to be released from state custody on September 3, 2021, sometime around August 17, 2021. *Id.* at 9–10. Despite becoming aware of his 2016 conviction and his release date, it appears that Petitioner was not detained by DHS upon his release from state custody in 2021.

Instead, Petitioner was detained on October 24, 2025 when reporting at the ICE office in accordance with his OSUP. *Id.* at 11; Dkt. No. 1 at 2. He alleges that he has completed his check-ins before without issue—a fact which Respondents do not dispute. *Id.* at 2. Records submitted by Respondents do not indicate why Petitioner was taken into custody during his last check-in. Indeed, it appears that Petitioner has not been arrested or convicted of any criminal offense since he was released from state custody in 2021. Rather, Respondents' records simply state that Petitioner "was taken into custody and processed for revocation of OSUP." Dkt. No. 10 at 11.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner argues in Ground One of the Petition that his continued detention violates his Fifth Amendment right to due process and 8 U.S.C. § 1231(a)(6) because his removal is not reasonably foreseeable. Dkt. No. 1 at 13–14. Respondents do not respond to this argument, instead arguing that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). Dkt. No. 10 at 3–6. The Court agrees with Petitioner and grants the Petition as to ground one.

### A. Petitioner's Detention is Controlled by 8 U.S.C. § 1231(a)(6).

Section 1226(c) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018), while 8 U.S.C. § 1231(a) applies to detention after the entry of a final order of removal, *Avilez v. Garland*, 69 F.4th 525, 531 (9th Cir. 2023). Respondents provide no explanation or authority suggesting that § 1226(c) applies to post-removal detention. Rather, they argue in passing that he may be detained under either § 1226(c) or § 1231(a)(6). *See* Dkt. No. 10 at 2.

Respondents are wrong on the law. Section 1226(c) "applies throughout the administrative and judicial phases of removal proceedings and ends when removal proceedings have concluded. When a noncitizen becomes subject to a final removal order, detention authority shifts to 8 U.S.C. § 1231(a), and the *Zadvydas* framework for prolonged detention applies." *Popov v. Rader*, No. 2:26-CV-01171-JAD-BNW, 2026 WL 1415194, at *3 (D. Nev. May 20, 2026); *see also, Recinos-Mejia v. Mullin*, No. 2:26-CV-02572-MMD-MDC, 2026 WL 2838404, at *3 (D. Nev. Sept. 22, 2026) ("Because [petitioner] has a final removal order, the statutory authority governing his detention is therefore § 1231(a), not § 1226(c)."); *R. v. U.S. Immigr. & Customs Enf't*, No. 1:26-CV-04279-MWJS, 2026 WL 1965908, at *7 (E.D. Cal. July 7, 2026) (accord). Accordingly,

Petitioner cannot be mandatorily detained under 8 U.S.C. § 1226(c) because he is subject to a final order of removal—a fact which Respondents concede.

**B. Petitioner's *Zadvydas* Argument Is Persuasive and Entitles Him to Release**

When a noncitizen "has been found to be unlawfully present in the United States and a final order of removal has been entered," the government must attempt to execute their removal "during a subsequent 90-day statutory 'removal period.'" *Zadvydas*, 533 U.S. at 682; *see* 8 U.S.C. § 1231(a)(1). During that 90-day period, the Immigration and Nationality Act requires the government to detain the noncitizen. 8 U.S.C. § 1231(a)(2)(A). If the government has not been able to remove the noncitizen at the conclusion of 90 days, then the removal period ends and the "statutory basis" for detention "shift[s] from § 1231(a)(2) to § 1231(a)(6)." *Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008). And under § 1231(a)(6), the government "'may' continue to detain an alien who still remains [in the United States] or release that alien under supervision." *Zadvydas*, 533 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(6)). In other words, detention is permitted but not required after 90 days.

To determine whether detention pursuant to § 1231(a)(6) has become unconstitutionally prolonged, the Supreme Court has offered guidance to federal courts about how to assess the duration of detention. Up to six months, detention is to be treated as "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. But if after six months the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must then "respond with evidence sufficient to rebut that showing." *Id.* If the government cannot rebut the presumption, the noncitizen must be released. *See id.*

The first step of the analysis is easily met. Petitioner was detained for some period after he was ordered removed and then released on an OSUP in 2006. Though the record does not make clear how long this initial detention was, it does not matter because Petitioner's most recent detention has well surpassed six months. Petitioner was arrested by ICE on October 24, 2025, and has remained in detention for the last eleven months. *See* Dkt. No. 1 at 2.

The next step of the *Zadvydas* analysis requires Petitioner to offer "good reason to believe

that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Petitioner has not offered much on this point, and it is admittedly a close call. But taking into account the record in this case and the Court's obligation to liberally construe the arguments of pro se petitioners, *see Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006), the Court concludes that Petitioner has made just enough of a showing to shift the burden to Respondents to rebut the presumption. Petitioner has not been removed in the nearly twenty-six years since his removal order was entered, despite the Government's efforts to remove him in 2006. Further, he has attended multiple ICE check-ins pursuant to his order of supervision, and it appears none of these check-ins resulted in renewed efforts to execute Petitioner's removal. Additionally, Petitioner has now been detained for an additional eleven months and it appears no further progress has been made towards his removal.

Respondents have offered no rebuttal to Petitioner's *Zadvydas* claim. Rather, their entire opposition rests on the erroneous belief that Petitioner may still be mandatorily detained under 8 U.S.C. § 1226(c), even though they concede that he is subject to a final order of removal. *See* Dkt. No. 10 at 2. As the Court explained above, this is wrong. Given that Respondents have failed to rebut Petitioner's *Zadvydas* claim, the Court presumes that there is no reasonable likelihood of removing Petitioner in the foreseeable future, and he is entitled to relief on ground one of the petition.

## IV. CONCLUSION AND ORDER

Petitioner has been subject to a final removal order for nearly twenty-six years. During that time, it appears that Petitioner has experienced periods of criminality. It is, therefore, unsurprising that Respondent took him into custody in the hopes of executing the longstanding final order of removal against him. They have been unable to execute the order, and Petitioner has now been detained well beyond the statutory removal period laid out in the Immigration and Nationality Act. And as the Supreme Court has explained, the detention of a noncitizen who has been ordered removed cannot be indefinite. Petitioner has shown that his detention pursuant to § 1231(a)(6) has become unconstitutionally prolonged, and Respondent has offered no other valid basis for his

United States District Court
Eastern District of California

continued detention. The Constitution therefore requires Petitioner's immediate release.

For the foregoing reasons, the Petition for Writ of Habeas Corpus, Dkt. No. 1, is GRANTED. The court ORDERS Respondent to release Petitioner from detention on appropriate conditions of supervision, in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5. To allow supervising authorities reasonable opportunity to determine appropriate conditions of supervision, the Court orders that release be affected within seven (7) days of the date of this Order.

The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: September 25, 2026

EDWARD J. DAVILA
United States District Judge